IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
─────────────────────────────
                            :
T.B.,                       :        HON. JEROME B. SIMANDLE
a minor, individually and by :
his Parent J.K.,            :        Civil No. 09-4780 (JBS/KMW)
                            :
           Plaintiff,       :
                            :
     v.                     :              OPINION
                            :
MOUNT LAUREL BOARD OF       :
EDUCATION,                  :
                            :
           Defendant.       :
                            :
─────────────────────────────
```

APPEARANCES:

Jamie Epstein, Esq.
1101 Route 70 West
Cherry Hill, NJ 08002
     Counsel for Plaintiff

Carl Tanksley, Jr., Esq.
PARKER MCCAY PA
1009 Lenox Drive
Building 4 East
Suite 102a
Lawrenceville, NJ 08648
     Counsel for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This case involving a claim for attorney fees under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, as well as a claim under the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-1, is before the Court on multiple motions.  Defendant Mount Laurel Board of Education moves for judgment on the pleadings as to the NJLAD

claim pursuant to Federal Rule of Civil Procedure 12(c), arguing that the claim is not sufficiently supported by the Amended Complaint's allegations and that this Court lacks jurisdiction over it [Docket Item 20]; Defendant seeks to dismiss the claim for fees pursuant to Federal Rule of Civil Procedure 12(b)(6) because of a settlement offer that Defendant claims satisfies the statutory requirements for a prohibition on attorney fee-shifting in cases that could have settled [Docket Item 21]; and Defendant moves to sanction Plaintiff J.K. for allegedly misrepresenting the status of her legal representation to an Administrative Law Judge, citing Federal Rule of Civil Procedure 60(b)(3) [Docket Item 22].  Plaintiff moves to have a late-filed opposition to Defendant's motions considered by the Court [Docket Item 28], and Plaintiff also moves for partial summary judgment as to the fee-shifting claim pursuant to Federal Rule of Civil Procedure 56(a) [Docket Item 29].

## II.   BACKGROUND

T.B. is a child who resides within the Mount Laurel School District and has been deemed eligible for special education and related services pursuant to the IDEA.  During the 2008-09 school year, J.K., the mother of T.B., and the school district were unable to agree through informal negotiations upon specific terms

of an individualized education plan for T.B.[1]  On January 23,
2009, J.K. filed a petition with the school district for a due
process hearing pursuant to 20 U.S.C. § 1415.  (Pl.'s Ex. 1 to
summary judgment motion "Due Process Petition".)  The petition
alleges that T.B.'s then-current education plan was a fill-in-
the-blank form filled with illegible handwriting.  (Id. at 3.)
The existing plan stated that T.B. needed one-on-one instruction,
and the petition states T.B. was not receiving it.  (Id.)
Moreover, the petition alleges, the existing plan's assessment of
T.B.'s behavior was not current, and the goals and objectives
were inadequate.  The petition complains that the behavior plan
was not developed by a behavior consultant, and was not based on
an assessment of T.B.'s behaviors.  Finally, the petition
addresses the disciplinary measures taken with respect to T.B.
It states that T.B. had been improperly suspended on numerous
occasions without the existing plan distinguishing between
behaviors that were part of T.B.'s disability and other
discipline-worthy behaviors, and adds, without further details,
that T.B. had been subject to "corporeal punishment/adversive
conditioning."  (Id.)

---

[1]  An individualized education plan, or IEP, is "a detailed
written statement arrived at by a multi-disciplinary team
summarizing the child's abilities, outlining the goals for the
child's education and specifying the services the child will
receive."  Jeremy H. v. Mount Lebanon School Dist., 95 F.3d 272,
275 n.4 (3d. Cir. 1996) (citation omitted).

3

The petition sought seven specific remedies: (1) an independent psychiatric evaluation; (2) an independent behavior assessment and behavior intervention plan, the implementation of which will be overseen by the behavior expert; (3) a prohibition on "corporeal punishment/adversive conditioning;" (4) a prohibition on discipline for behaviors that are a manifestation of T.B.'s disability; (5) a one-to-one aide; (6) compensatory education for the period the district failed to provide an appropriate education; and (7) a legible individualized education plan with reasonable and measurable goals.  (Id.)

In response to the due process petition, district administrators scheduled a meeting with J.K., which took place in February 2009.  (Def.'s Ex. 2 to summary judgment motion at 1.) After this meeting, Dr. Diane Willard, Director of Child Study Team and Special Services for the District, made an offer substantially but not entirely acceding to the requests made in the due process petition.  (Id.)  The District agreed to an independent psychiatric evaluation, an independent behavior assessment and behavior intervention plan, a one-to-one aide, and a legible individualized education plan with reasonable and measurable goals.  And they agreed that the individualized plan would note J.K.'s request that T.B. not be "restrained" and an alternate plan to be implemented with delineated procedures when T.B. acts out aggressively.  The district also offered to discuss

4

and determine the necessary compensatory education at a later time.  (Id.)

J.K. did not accept the offer.  On February 25, 2009, the matter was transmitted to the Office of Administrative Law for a hearing scheduled for March 9, 2009.  After some continuances for Plaintiff to seek legal advice, the parties subsequently attempted to resolve the matter on a number of occasions, but were still unable to reach a resolution.

Finally, on July 15, 2009, the parties met and were able to agree on settlement terms.  ALJ James-Beavers memorialized those terms in an order issued July 20, 2009.  (Pl.'s Ex. 2 to summary judgment.)  They included: (1) provision of a one-to-one aide; (2) evaluation from a psychiatrist of J.K.'s choice at the district's expense for a reasonable hourly rate; (3) a functional behavioral assessment and positive behavior intervention plan from a behavior consultant of J.K.'s choice at the district's expense for a reasonable hourly rate, including having the behavioral consultant address the need to adopt different disciplinary procedures; (4) fifty hours of compensatory education from a certified special education teacher by September 30, 2009; (5) a legible IEP for the 2009-2010 school year with current levels of functioning in goals and objectives written in measurable and observable terminology; and (6) an agreement not to use corporal punishment or aversive conditioning on T.B.  The

parties were ordered to comply with the terms.  (<u>Id.</u>)

Plaintiff brings this action to collect attorney fees as provided for in the IDEA, and brings a new claim for monetary damages and fees based pursuant to NJLAD.  Defendant seeks to dismiss both claims, arguing that their attempt to settle the IDEA issue in February means attorneys fees are inappropriate; that there is no basis in the pleadings for the NJLAD claim, over which this Court lacks subject matter jurisdiction anyway; and that Plaintiff should be denied attorney fees for allegedly falsely telling ALJ James-Beavers in March 2009 that she needed an extension of time to obtain counsel when she was already being represented.  Plaintiff, who failed to timely oppose these motions, seeks to have a late-filed opposition brief considered. Plaintiff also moves for partial summary judgment as to the fee-shifting issue.

## III.  DEFENDANT'S MOTIONS

### A.  Plaintiff's Untimely Opposition

Defendant filed its three motions on September 30, 2010, setting the deadline for opposition as October 18, 2010 under the Local Civil Rules.  <u>See</u> L. Civ. R. 78.1(a).  Realizing that he could not meet this deadline, Plaintiff's counsel filed for the automatic extension provided for under the Local Civil Rules, which moves the return date to the next available motion day, in

6

this case November 15, 2010, requiring opposition to be filed by
November 1, 2010.  See L. Civ. R. 7.1(c)(5).  But Plaintiff's
counsel did not file that opposition until November 15, 2010, two
weeks after the proper date.

The following day, Plaintiff's counsel filed a motion for a
retroactive extension of time, stating that the mistake was due
to an error he made in calendaring the due date for opposition.
That motion is opposed by Defendant.

In order to grant a retroactive motion for an extension of
time, the Court must find that Plaintiff's counsel's error
constituted excusable neglect.  See Lujan v. National Wildlife
Federation, 497 U.S. 871, 896 (1990) ("Any postdeadline extension
. . . is permissible only where the failure to meet the deadline
'was the result of excusable neglect.'") (quoting Fed. R. Civ. P.
6(b)).  The Supreme Court, observing that the phrase "excusable
neglect" is used throughout the Rules of Civil Procedure and
Bankruptcy Rules, has said that the word "neglect" connotes even
those simple errors not caused by some external force.  Pioneer
Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507
U.S. 380, 389 (1993).  But only some of these errors are
"excusable."  The Supreme Court explained, "Because Congress has
provided no other guideposts for determining what sorts of
neglect will be considered 'excusable,' we conclude that the
determination is at bottom an equitable one, taking account of

all relevant circumstances surrounding the party's omission."
Id. at 395.

   In discussing the Rules of Appellate Procedure's identical
provision, the Third Circuit Court of Appeals has held that five
factors are particularly relevant to this equitable inquiry:
(1) whether the inadvertence reflects professional incompetence
such as ignorance of the rules of procedure; (2) whether the
asserted inadvertence reflects an easily manufactured excuse
incapable of verification by the court; (3) whether the tardiness
results from counsel's failure to provide for a readily
foreseeable consequence; (4) whether the inadvertence reflects a
complete lack of diligence; or (5) whether the court is satisfied
that the inadvertence resulted despite counsel's substantial good
faith efforts toward compliance.  Consol. Freightways Corp. v.
Lawson, 837 F.2d 916, 912-20 (3d Cir. 1987).[2]  Ultimately, the
Court must be satisfied "that counsel has exhibited substantial
diligence, professional competence and has acted in good faith to
conform his or her conduct in accordance with the rule, but as
the result of some minor neglect, compliance was not achieved."
Consol. Freightways, 827 F.2d at 920.

   The five factors are not clearly dispositive one way or the

_____

   [2]  As the parties both concede, this standard applied by the
Third Circuit Court of Appeals prior to Pioneer continues to
apply today.  See Kanoff v. Better Life Renting Corp., 350 Fed.
App'x 655, 657 (3d Cir. 2009) (applying Consol. Freightways Corp.
v. Lawson, 837 F.2d 916, 918 (3d Cir. 1987)).

other in this case.  If counsel's mistake was merely a clerical error rather than ignorance of the law, then the professional incompetence factor points in counsel's favor.  And an item can be miscalendared without there being a complete lack of diligence.  However, it is an easily manufactured excuse. Whether it was the result of counsel's failure to prepare for a readily foreseeable consequence or not depends on counsel's method for ensuring proper calendaring, about which there is no evidence.

If, on the other hand, counsel misunderstood the meaning of a "return date," then the factors would clearly point to the neglect being inexcusable.  Misunderstanding a simple and clearly stated rule is the paradigm case of professional incompetence, an easily manufactured excuse incapable of verification by the court, reflects a complete lack of diligence, and does not occur despite substantial good faith efforts toward compliance.

The strength of counsel's excuse turns, therefore, to some extent on whether Plaintiff has shown the error to be clerical rather than legal.  This is consistent with the law in other circuits.  Every Circuit to have considered the issue has found that misinterpreting a timing rule does not constitute excusable neglect.  See Advanced Estimating System, Inc. v. Riney, 130 F.3d 996, 997 (11th Cir. 1997) (misunderstanding of procedural rules not excusable neglect); Committee v. Yost, 92 F.3d 814, 825 (9th

Cir. 1996); <u>Prizevoits v. Indiana Bell Telephone Co.</u>, 76 F.3d
132, 133 (7th Cir. 1996); <u>Weinstock v. Cleary, Gottlieb, Steen &
Hamilton</u>, 16 F.3d 501, 503 (2d Cir. 1994); <u>United States v.
Clark</u>, 51 F.3d 42 (5th Cir. 1995).  Conversely, clerical errors
are generally excusable.  <u>See</u> <u>Ojeda-Sanchez v. Bland</u>, No.
608CV096, 2010 WL 1737591, at *1 (S.D. Ga. April 29, 2010)
(noting that a clerical error would be excusable but declining to
find excusable neglect when there was no evidence to distinguish
between misrecording a properly understood date and
misunderstanding the rule in question).

Mr. Epstein argues that he understood how to properly
calculate the date, he just wrote it down wrong.   However,
counsel's sworn affidavit — in which he presumably could have
made the matter crystal clear — leaves the cause of the error
ambiguous, stating only, "I mistakenly calendared the return date
of November 15 as the due date for my opposition."  (Epstein Aff.
on motion for extension ¶ 3.)  It is unclear from the sworn
statement whether the source of this mistake was misunderstanding
the meaning of "return date," or just some kind of careless error
in which November 1 was written down as November 15.

This Court would ordinarily grant an attorney the benefit of
the doubt that the error was a momentary lapse in an otherwise
good faith effort to comply with the rules.  But Mr. Epstein has
been repeatedly warned about his carelessness.  <u>See</u> <u>M.G. v.</u>

Eastern Regional High School Dist., 386 Fed. App'x 186, 188 (3d Cir. 2010) (reprimanding Epstein's neglect); L.J. ex rel. V.J. v. Audubon Bd. of Educ., Civil No. 06-5350 (JBS), 2009 WL 995458, at *8 n.9, *12 (D.N.J. April 13, 2009) (reprimanding Epstein's carelessness and poor professional judgment); Deptford Tp. School Dist. v. H.B. ex rel E.B., 279 Fed. App'x 122, 126 n. 2 (3d Cir. 2008) (reprimanding Epstein's carelessness).

Given counsel's history, the Court is not persuaded that the present mistake was a result of the kind of minor inadvertence that even careful lawyers are subject to, rather than further evidence of Mr. Epstein's occasionally careless treatment of important legal details.  Indeed, even if the Court were persuaded that this was a clerical error, there are only so many times Mr. Epstein can come before the Court claiming that an error in his favor was a careless error rather than professional incompetence before the neglect becomes inexcusable.  See Global Horizons Inc. v. Del Monte Fresh Produce, N.A., Inc., 392 Fed. App'x 805, at *1 (11th Cir. 2010) (affirming decision that miscalendaring was inexcusable neglect in light of attorney's history).  The Court will therefore not consider the late-filed opposition when deciding Defendant's motions.[3]

_____

    [3]  Mr. Epstein should consider himself fortunate that his opposition was not necessary to defeat the Rule 12(b)(6) and Rule 60 motion and that, since he made no arguments regarding supplemental jurisdiction, his opposition to the Rule 12(c) motion would have been irrelevant anyway, as set forth in detail

**B.  Defendant's Rule 12(b)(6) motion**

Although Plaintiff's opposition will be stricken as untimely, the Court must nevertheless examine whether dismissal is merited under Rule 12(b)(6).  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  A complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability.  Twombly, 550 U.S. at 555; Fed. R. Civ. P. 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).

In its review of Defendant's motion to dismiss, the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Defendant asserts that 20 U.S.C. § 1415(i)(3)(D), which prohibits fee-shifting when certain kinds of settlement offers are made, forecloses this request for attorney's fees in this

---

below.  Hopefully this relatively harmless error will prompt him to take more care in the future.

case because of the content of the February settlement offer.
Under Rule 12(b)(6), the Court cannot consider a document not
referenced in the pleadings unless it is integral to the
Complaint.  See In re Burlington Factory Sec. Litig., 114 F.3d
1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp.,
82 F.3d 1194, 1220 (1st Cir. 1996).   In this case, the content
of the February settlement offer is not integral to the
Complaint.  Quite simply, neither of Plaintiff's claims depend in
any way on the content of that offer.  Therefore, Plaintiff's
motion is procedurally improper.

     The argument as to 20 U.S.C. § 1415(i)(3)(D) is, however,
procedurally appropriate as opposition to Plaintiff's motion for
summary judgment.  It will therefore be considered in that
context, below.[4]


     **C. Defendant's Rule 12(c) motion**

     Defendant asks the Court to reject supplemental jurisdiction
over the NJLAD claim, but Defendant confusingly combines this
argument with one about the sufficiency of the pleadings and
places both arguments under the heading of Rule 12(c).  Since the
Court must review its own subject matter jurisdiction pursuant to

---

     [4]  Since, as explained below, the Court finds that Plaintiff
is entitled to summary judgment despite 20 U.S.C. §
1415(i)(3)(D), it would be futile to convert Defendant's motion
to dismiss into a motion for summary judgment.

Rule 12(h)(3), and since this resolves the issue, the Court will begin and end with an examination of whether to exercise supplemental jurisdiction over this claim.

In order for the Court to entertain a state law claim between non-diverse parties, the state law claim must share a common nucleus of operative facts with a claim over which the Court has original jurisdiction.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).  Even when a state and federal claim share a common nucleus of operative facts, when "the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  Gibbs, 383 U.S. at 726; see also 28 U.S.C. § 1367(c)(2).

In this case, Plaintiff fails to demonstrate that there is a common nucleus of operative facts.  The federal claim rests only on facts about the negotiation and litigation history between the parties in the first half of 2009 and has no substantive claim to adjudicate.  The state claim, on the other hand, rests on the substantive conduct of the school toward T.B.  In short, the facts underlying each claim have no relevance to the other claim, even though they both relate, in some sense, to a common set of underlying events.

14

Even if the two claims are sufficiently connected to meet
the threshold requirement of a common nucleus of operative facts,
the state claim substantially predominates over the federal claim
in this action.  Plaintiff seeks to use the end stages of a
longer state administrative process regarding the IDEA claim, in
which the only dispute is the propriety of a fee award, to open a
brand new state law action in federal court.  The NJLAD claim is
the only one requiring further proceedings since the necessary
facts to resolve the federal fee-shifting claim are undisputed,
as explained below in Part IV.B.  Permitting the state claim to
go forward would be "allowing a federal tail to wag what is in
substance a state dog."  See Borough of W. Mifflin v. Lancaster,
45 F.3d 780, 789 (3d Cir. 1995) (quoting Gibbs, 383 U.S. at 727).

     Other than a handful of paragraphs composed for this
preliminary motion, the Court is not aware of any resources
having been spent litigating the NJLAD claim in this Court.
The Court is satisfied that judicial economy, fairness to the
parties, and convenience all dictate that the Court decline to
exercise supplemental jurisdiction over the claim.


**D. Defendant's Rule 60 motion**

Rule 60 of the Federal Rules of Civil Procedure, titled
"Relief from Judgment or Order" provides that "[o]n motion and
just terms, the court may relieve a party or its legal

representative from a final judgment, order, or proceeding" for
certain specified reasons, including "(3) fraud (whether
previously called intrinsic or extrinsic), misrepresentation, or
misconduct by an opposing party." Rule 60, Fed. R. Civ. P.
Defendant asserts that Plaintiff fraudulently misrepresented her
status with regard to legal representation because she advised
the Office of Administrative Law of a desire to seek
representation during a March 12 hearing in order to obtain an
extension, and therefore the Court should deny the application
for legal fees.

Defendant does not seek relief from a judgment or order, so
Rule 60 is inapposite. Perhaps recognizing this, Defendant cites
case law relating to fraud on the court, arguing that the Court
has the inherent power to sanction a party for fraud on the
Court, and that the appropriate sanction here is denial of fees.
Defendant is correct that district courts possess the inherent
power to sanction one "who defiles the judicial system by
committing a fraud on the court." See Aoude v. Mobil Oil Corp.,
892 F.2d 1115, 1118 (1st Cir. 1989).

Defendant's motion will be denied for four reasons. First,
reduction of fees rather than outright denial would be the
proportionate penalty for a party wrongfully obtaining a
continuance. Second, this is not the Court that was allegedly
defrauded. Since the power to sanction a party for fraud on the

court arises this Court's authority to properly manage its own affairs, <u>Aoude</u>, 892 F.2d at 1118, the place to seek sanctions for the alleged conduct was before the Court allegedly defrauded. Third, the allegations are too vague to determine whether Plaintiff asked for an extension in order to "seek counsel" in the sense of seek advice or to "seek counsel" in the sense of obtain a new attorney — it appears that only the latter interpretation would be false.  And fourth, and most importantly, Defendant's motion does not attach or cite any evidence.  The motion will therefore be denied.

## IV.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the suit under the applicable rule of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993).  However, the court will view any

17

evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**B.  Analysis**

The IDEA authorizes an order for attorney fees as part of the costs to the parents of a child with a disability who is the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  In Buckhannon Bd. v. West Virginia D.H.H.R, the Supreme Court explained the proper interpretation of the term "prevailing party" in the context of resolutions other than final judgments as the result of litigation.  532 U.S. 598, 605 (2001).  Although Buckhannon was not an IDEA case, the Third Circuit Court of Appeals has applied it to IDEA's identical language.  John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 556, 556-7 (3d Cir. 2003).  Under Buckhannon, a party benefiting from a settlement agreement can be a prevailing party if the "change in the legal relationship of the parties" was in some way "judicially sanctioned."  Buckhannon, 532 U.S. at 605.

The settlement in this case is indisputably judicially sanctioned.  A stipulated settlement is judicially sanctioned where it: 1) contains mandatory language; 2) is called an Order 3) bears the signature of a judicial officer; and 4) provides for judicial enforcement.  See P.N. v. Clementon Bd. of Educ., 442

18

F.3d 848, 853-54 (3d Cir. 2006) (citing <u>John T.</u>, 318 F.3d at 556, 558 (3d Cir. 2003)).  When, as here, the order of an Administrative Law Judge compels the parties to comply with the settlement terms, it is sufficiently judicially sanctioned to meet the test.  <u>Id.</u> at 854 (citing <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375 (1994)) ("<u>Kokkonen</u> suggests settlement of an administrative proceeding is the equivalent of an administrative decree on the merits where, as here, the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal.").[5]

The question in this case is therefore whether this judicially sanctioned resolution caused a "change in the legal relationship of the parties." <u>Buckhannon</u>, 532 U.S. at 605.  A resolution meets this standard when it "modifies the defendant's behavior in a way that directly benefits the plaintiff." <u>Clementon</u>, 442 F.3d at 855 (quoting <u>Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 251 (3d Cir. 1999)).  Purely

---

[5]    The recently decided Third Circuit case on the topic of prevailing party status does not affect this result.  <u>See</u> <u>Singer Management Consultants, Inc. v. Live Gold Operations, Inc.</u>, No. 09-2238, Slip Op. (3d Cir. June 15, 2011).  The Court in <u>Singer</u> found that a party who succeeded in getting a temporary restraining order, but whose claim was mooted by the defendant's change in legal position after the order (which was eventually vacated), was not a prevailing party under 42 U.S.C. § 1988.  <u>Id.</u> at 13-16.  The Court did not alter the rule that a final settlement agreement enforced by consent decree can make one a prevailing party.  <u>Id.</u> at 16.  Here, a settlement agreement is enforced by the final order of a judicial officer.

technical or trifling success is insufficient.  <u>Texas State
Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792
(1989).

There is no dispute that, as against the status quo prior to
February 2009, the judicially-approved settlement materially
altered the legal relationship of the parties, compelling the
school to provide certain resources it had not previously been
compelled to provide.  Defendant maintains, however, that as
indicated in the February 2009 offer to Plaintiff, it was already
seeking to provide Plaintiffs with all items previously requested
long before the final settlement.  Therefore, Defendant reasons,
the order confirming the July 15 settlement did not modify
Defendant's behavior.

The Court assumes for the sake of argument that Defendant is
correct that Plaintiff must prove that the July 15 settlement was
more favorable to Plaintiff than the February offer in order to
show a modification of Defendant's behavior.[6]  Even so, the

---

[6]  The nature of the Court's inquiry into causation post-
<u>Buckhannon</u> is not entirely clear, since <u>Buckhannon</u>'s requirement
of a judicial imprimatur builds in a requirement that it was
legal action that brought about the result.  And the IDEA already
provides a check to prevent unnecessary litigation after an
appropriate settlement offer.  <u>See</u> 20 U.S.C. § 1415(i)(3)(D)(i)
(prohibiting an award of fees if an offer is made and rejected
sufficiently early, and the Court finds that "the relief finally
obtained by the parents is not more favorable to the parents than
the offer of settlement").  So long as <u>Buckhannon</u> and the statute
are met, it may be that no further inquiry is required.  <u>But see
Wheeler v. Towanda Area School Dist.</u>, 950 F.2d 128, 131 (3d Cir.
1991) (describing the implied element of causation).  Since in

undisputed facts show that the final settlement that the ALJ ordered the parties to comply with was more favorable than the initial offer in at least three ways: the initial offer was only to "put in the IEP that the parent has requested that T.B. not be restrained," but not to actually change the disciplinary procedures;  T.B.'s behavior intervention plan is, under the final settlement, to be overseen by the expert who developed it, an important provision not offered in the February letter; and, unlike the final settlement's concrete requirement of fifty hours of compensatory education, the initial offer was only an offer to discuss the appropriate compensatory education, containing no promise of compensatory education in any amount.  Each of these standing alone is a significant modification.

The undisputed facts show that the ALJ ordered the parties to comply with a settlement that materially altered the legal status of the parties from their status both before and after the February 2009 offer.  Therefore, Plaintiff was the prevailing party in this action.  Plaintiff is therefore entitled to reasonable attorney fees pursuant to 20 U.S.C. § 1415(i)(3)(B).

### C. **Local Civil Rule 54.2**

Having prevailed on this motion for partial summary

---

this case the final settlement was materially more favorable than even the February voluntary offer, the Court need not determine how causation must be assessed in light of <u>Buckhannon</u>.

judgment, under the Local Civil Rules of this District,
Plaintiff's counsel will have to provide the necessary materials
to this Court to determine the proper fee.  See L. Civ. R. 54.2.

In recent years, several of Mr. Epstein's fee applications
have resulted in protracted, wasteful conflicts over his fees.
See Deptford Township Sch. Dist. v. H.B. (Deptford II), Civ. No.
01-784, 2006 WL 3779820 (D.N.J. Dec. 21, 2006), rev'd on other
grounds, 279 Fed. App'x 122 (3d Cir. 2008); P.N. v. Clementon Bd.
of Educ., Civ. No. 02-1351, 2007 WL 1186552 (D.N.J. Apr. 20,
2007); L.J. v. Audubon Bd. of Educ., Civ. No. 06-5350, 2009 WL
995458 (D.N.J. Apr. 13, 2009); M.G. v. Eastern Regional High
School Dist., Civil No. 08-4019 (RBK), 2009 WL 3489358 (D.N.J.
Oct. 21, 2009).[7]  In an attempt to avoid any such conflicts, the
Court reminds Mr. Epstein of his obligation to not treat "his fee
application as an opening offer rather than a carefully
calculated and honest fee request."  See M.G., 2009 WL 3489358,
at *6.

Before submitting his Rule 54.2 materials, Mr. Epstein
should carefully consider the appropriate billing rate; whether
all the billed tasks are appropriately billed at the rate earned

---

[7]  The Court of Appeals vacated this decision because the
district court failed to hold a hearing to assess the
reasonableness of the fees, but agreed with the district court
that Mr. Epstein's application was in other respects "either
grossly negligent or fraudulent."  M.G. v. Eastern Regional High
School Dist., 386 Fed. App'x 186, 189 (3d Cir. 2010).

by an experienced attorney; whether he has been sufficiently careful to avoid any mistakes or miscalculations; and whether the overall amount is reasonable in light of the facts of this case. His fee request also should not seek compensation for deficient performance, such as his preparation of the opposition brief that was not considered, as well as the unsuccessful motion for late filing of that brief, above.  The fee request should also not include time expended on the NJLAD claim, above.  Mr. Epstein has a new opportunity to demonstrate his good faith in making fee requests.  The Court hopes he will seize it.

## IV.  CONCLUSION

Defendant's motion to dismiss the fee claim and to punish Plaintiff for fraud on the court will be denied.  The Court declines to exercise supplemental jurisdiction over the NJLAD claim, mooting Defendant's Rule 12(c) motion.  Having found that Plaintiff was the prevailing party before the Office of Administrative Law, the Court will grant Plaintiff summary judgment on the fee-shifting claim.  Given Plaintiff's counsel's history before this Court, he should take special care in preparing his Rule 54.2 filing.  The accompanying Order will be entered.

**June 20, 2011**                           **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                            United States District Judge