IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| T.B., a minor, individually and by his Parent, J.K., | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 09-4780 (JBS/KMW) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| MOUNT LAUREL BOARD OF EDUCATION, | : | |
| Defendant. | : | |

APPEARANCES:

Jamie Epstein, Esq.
1101 Route 70 West
Cherry Hill, NJ 08002
      Counsel for Plaintiff

Carl Tanksley, Jr., Esq.
PARKER MCCAY PA
Building 4 East
Suite 102a
Lawrenceville, NJ 08648
      Counsel for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

This matter comes before the Court upon Plaintiff's application for attorney's fees pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400.  [Docket Item 39].  Plaintiff's application seeks $56,120 in attorney's fees and costs.  Defendant Mount Laurel Board of Education opposes this motion on the ground that Plaintiff's application

1

for attorney's fees and costs contains, among other things, an unreasonable, unwarranted hourly rate, coupled with unreasonable and excessive hours.  The principal issue presented is whether Plaintiff's counsel has demonstrated a reasonable hourly rate for his services in the context of a fee application for which no contrary evidence has been submitted by the objecting party.  The second issue is whether the hours claimed are reasonable for the tasks performed by an attorney of the applicant's experience and knowledge of this subject matter, and in light of the degree of success obtained.  For the reasons discussed herein, the Court will award Plaintiff $45,494 in attorney's fees and costs.

## II.  BACKGROUND

The instant motion was filed following the Court's determination that Plaintiff, T.B. and his mother, J.K., qualified as "prevailing parties" for the purpose of attorney's fees under the IDEA.  The procedural history and underlying facts of this case are described in detail in the Court's June 20, 2011 opinion, see T.B. v. Mount Laurel Bd. of Educ., Civ. No. 09-4780, 2011 WL 2473327, 2011 U.S. Dist. LEXIS 66682 (D.N.J. June 20, 2011), and are reviewed herein only to the extent necessary to serve as a context for the fee application under consideration.

T.B., a student in the Mount Laurel School System, has been eligible, under the IDEA, for special education.  Id. at *1.  On

2

January 23, 2009, T.B.'s mother, J.K., filed a due process petition pursuant to 20 U.S.C. § 1415, alleging that T.B.'s existing education plan was inadequate and improper. Id. The petition identified various shortcomings in T.B.'s existing education plan, and sought further remedies including behavior and psychiatric evaluations, as well as, the development of a reasonable individualized education plan (IEP) with measurable goals. Id. The district administrators, in response to the petition, met with J.K. and offered a solution and plan. Id. at *2. J.K. rejected the offer. Id.

On February 25, 2009, the matter was transferred to the Office of Administrative Law for a hearing scheduled for March 9, 2009, before ALJ James-Beavers. Id. Subsequently, the parties retained legal counsel and eventually reached a settlement on July 15, 2009. Id. ALJ James-Beavers issued an order five days later containing the settlement terms ordering the parties to comply. Id. On September 17, 2009, Plaintiff filed a complaint to collect attorney fees as provided for in the IDEA, and claimed for damages and fees pursuant to NJLAD. [Docket Item 2].

On September 30, 2010, Defendant filed three motions, a Rule 12(c) motion for judgment on the pleadings, a Rule 12(b)(6) motion, and a Rule 60 motion to dismiss. [Docket Items 20-22].

3

While Plaintiff failed to file a timely response to the motions,[1] on December 3, 2010, Plaintiff subsequently filed a motion for summary judgment seeking to be found as the prevailing party. [Docket Item 29].  Defendant filed an opposition brief on December 20, 2010.  [Docket Item 33].  This Court, among other things, denied Defendant's motions and held that Plaintiff was the prevailing party before the ALJ, and ordered Plaintiff's counsel, attorney Jamie Epstein, to submit the necessary materials to this Court to determine the proper fee pursuant to Local Civil Rule 54.2.  T.B., 2011 WL 2473327, at *9.  The instant motion for attorney's fees was subsequently filed.


## III. DISCUSSION

The award of attorney's fees and costs in this case is authorized pursuant to the IDEA.  Specifically, under 20 U.S.C. § 1415(i)(3)(B), "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).

### A.   Prevailing Party

Under Buckhannon Bd. and Care Home, Inc. v. West Virginia

---

[1]   Plaintiff's response [Docket Item 27] to Defendant's motions was eventually filed on November 15, 2010, but not considered by this Court in its decision.

4

Dep't of Health and Human Res., 532 U.S. 598, 604 (2001), in
deciding whether a party is a prevailing party, "enforceable
judgments on the merits and court-ordered consent decrees create
the 'material alteration of the legal relationship of the
parties' necessary to permit an award of attorney's fees."  The
party seeking attorney's fees must "receive at least some relief
on the merits of [their] claim before [they] can be said to
prevail."  State Teachers' Ass'n v. Garland Indep. Sch. Dist.,
489 U.S. 782, 792 (1989).  In the Third Circuit, a court must
determine whether: (1) the plaintiff obtained relief on a
significant claim in the litigation; and (2) there is a causal
connection between the litigation and the relief obtained from
the defendant.  See Metro. Pittsburgh Crusade for Voters v. City
of Pittsburgh, 964 F.2d 244, 250 (3d Cir. 1992).  Furthermore,
"[m]ost courts have permitted plaintiffs to recover attorneys'
fees for success on the administrative level," in IDEA cases.
P.G. v. Brick Twp. Bd. of Educ., 124 F.Supp. 2d 251, 260 (D.N.J.
2000) (citing Field v. Haddonfield Bd. of Educ., 769 F.Supp.
1313, 1329 (D.N.J. 1991)).

This Court previously found that "[t]he undisputed facts [of
this case] show that the ALJ ordered the parties to comply with a
settlement that materially altered the legal status of the
parties from their status both before and after [Defendant's
previous] offer.  Therefore, Plaintiff was the prevailing party

5

in this action."[2]  T.B., 2011 WL 2473327, at *9.

**B.  Calculation of the Lodestar**

The starting point for this Court's determination of
reasonable attorney's fee is calculation of the lodestar amount,
which is "the number of hours reasonably expended multiplied by a
reasonable hourly rate." Penn. Env't Def. Found. v. CanonMcMill,
152 F .3d 228, 231 (3d Cir. 1998)(citing Hensley v. Eckerhart,
461 U.S. 424, 433 (1983)); see also Blakey v. Continental
Airlines, Inc., 2 F.Supp. 2d 598 (D.N.J. 1998).  In applying the
lodestar formula, it is imperative for a district court to
"carefully and critically evaluate the hours and the hourly rate
set forth by counsel." Blakey, 2 F.Supp. 2d at 602.  Once the
lodestar is calculated, the district court is permitted to adjust
fees depending on the success of the party seeking fees.  Penn.

---

[2]     This Court held:

> [T]he undisputed facts show[ed] that the final settlement
> that the ALJ ordered the parties to comply with was more
> favorable than the initial offer [of the defendant] in at
> least three ways: the initial offer was only to "put in
> the IEP that the parent has requested that T.B. not be
> restrained," but not to actually change the disciplinary
> procedures; T.B.'s behavior intervention plan is, under
> the final settlement, to be overseen by the expert who
> developed it, an important provision not offered in the
> February letter; and, unlike the final settlement's
> concrete requirement of fifty hours of compensatory
> education, the initial offer was only an offer to discuss
> the appropriate compensatory education, containing no
> promise of compensatory education in any amount.  Each of
> these standing alone is a significant modification.

T.B., 2011 WL 2473327, at *8.

Env't Def. Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433).

### 1.  Hourly Rate

The reasonable hourly rate is determined by reference to the marketplace.  See Missouri v. Jenkins, 491 U.S. 274, 285 (1989) ("We have consistently looked to the marketplace as our guide to what is 'reasonable.'")  The attorney's customary billing rate is the proper starting point for calculating fees.  Cunningham v. City of McKeesport, 753 F.2d 262, 268 (3d Cir. 1985).  Indeed, "the court should assess the experience and skill of the prevailing party's attorney[] and compare [his] rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The party seeking to recover attorney's fees has the initial burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001); L.J. ex rel. V.J. v. Audubon Bd. of Educ., 373 F. App'x 294, 296 (3d Cir. 2010).  The hourly rate to be determined is a reasonable rate at the time of the fee application, not at the past dates when services may have been rendered.

If the burden is met, the party opposing the fee award can

rebut the reasonableness of the proffered hourly rate with record evidence.  Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997).  If hourly rates are disputed with actual evidence rather than mere argument, the court must conduct a hearing to determine the reasonable market rates.  Id.  A district court may not set attorney's fees based upon "a generalized sense of what is usual and proper, but 'must rely upon the record.'"  Evans v. Port Auth., 273 F.3d 346, 362 (3d Cir. 2001) (quoting Smith, 107 F.3d at 225).  However, "[w]here the Plaintiffs meet their prima facie burden, 'and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward.'"  Killian v. Johnson & Johnson, Civ. No. 07-4902, 2009 WL 537666, at *16 (D.N.J. Mar. 4, 2009)(quoting Washington v. Philadelphia Court of Common Pleas, 89 F.3d 1031, 1036 (3d Cir. 1996)).

In this case, Plaintiff's counsel, attorney Jamie Epstein, has furnished his affidavit stating, among other things, that his hourly rate is $400 per hour, which he claims is consistent with the accepted hourly rate of qualified attorneys in the practice area of education law.  He has 20 years of experience as a member of the New Jersey bar specializing in the field of education law before administrative agencies and trial courts, and personal experience in providing educational services to educationally

handicapped children.  Mr. Epstein further submits several exhibits supporting his attorney fees including: affidavits of three experienced education law practitioners[3] stating that $400 per hour is a reasonable rate for someone of Mr. Epstein's experience and expertise, and well within the range of prevailing rates charged by attorneys with comparable skill and experience in New Jersey; an article and chart from the September 2005 issue of the New Jersey Law Journal reflecting billing rates at law firms in New Jersey for the year 2005 - "[t]he average mean rate for partners in New Jersey firms is $394."  Pl's Motion for Attorney's Fees at P-3-12, P-28-30.  He also submitted evidence of the retainer agreement and billing of a fee-paying client at the $400 rate (P-25-27), as well as retainer agreements in contingent fee-shifting cases at a $400 hourly rate. (P-13-24).

The affidavits of attorneys Greenwald, Giles and Johnson recite prevailing local rates for similarly experienced attorneys specializing in education law.  Greenwald's rate is $375 for all clients, as she does not accept clients on a contingent fee basis.  According to Ms. Greenwald, Rebecca Spar's rate is $375, Ted Sussan's rate is $425, and Jane Wesler's rate is $375, each taking cases only on a non-contingent basis.  Mr. Giles does not state his hourly rate but is familiar with rates of lawyers

---

[3] These affiants are Staci Greenwald, Esq. (P-1-8), David Giles, Esq. (P-9-10) and Guy Johnson, Esq. (P-11-12).

throughout the state practicing in this specialty and finds $400 is "within the range of prevailing rates." (P-10 at ¶ 14.) Mr. Johnson's services in special education, school law, real estate and commercial litigation are billed at $325 per hour. (P-11 at ¶¶ 1-2.) He further has attested Mr. Epstein, in addition to practicing law for 20 years, also has 15 years of additional professional experience with the disabled and handicapped, justifying the $400 hourly rate. The Court finds that these submissions satisfy the requirements as set forth in <u>Rode v. Dellarciprete</u>, 892 F.2d at 1190, and are sufficient evidence establishing a reasonable rate.

Defendant challenges the rate of $400 per hour as unreasonable for an attorney with Mr. Epstein's experience and reputation. Defendant argues that Mr. Epstein does not compare to the attorneys who submitted affidavits supporting and justifying his $400 per hour rate. Def.'s Br. in Opp. to Pl's Mot. at 18. Defendant points to numerous previous cases in this district where Mr. Epstein's fees were disputed. However, Defendant has not provided any evidence in the record of contrary rates except for its argument that lower rates were deemed appropriate for Mr. Epstein in previous matters. This is insufficient. <u>See</u> <u>Killian</u>, 2009 WL 537666, at *16 (finding the defendant's argument that significantly lower rates were approved for attorneys litigating similar cases was insufficient to rebut

a prevailing party's prima facie showing of a reasonable hourly rate when unsupported by any evidence in the record).  The Third Circuit has been explicit about the opponent's burden stating: "It is not enough merely to contest the claimed hourly rate; rather, [the opponent] <u>must submit evidence of a different hourly rate</u>." <u>Smith v. Phila. Housing Authority</u>, 107 F.3d at 225 (emphasis added).  Thus, Defendant has provided no contrary evidence "necessary to determine whether [Mr. Epstein's] rate is reasonable."  <u>Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly</u>, 195 F. App'x 93, 98 n.4 (3d Cir. 2006).[4]

In other words, where Mr. Epstein has submitted evidence of his actual billing rate of $400 per hour accompanied by three affidavits of practitioners in this community attesting to the

---

[4] In <u>Tenafly Eruv Association</u>, the Third Circuit noted that the party opposing the counsel's hourly rate argued that, "once the claimed hourly rate is disputed, a hearing is necessary to determine whether the rate is reasonable." <u>Tenafly Eruv Ass'n</u>, 195 F. App'x at 98 n.4.  But "it is not enough merely to contest the claimed hourly rate; rather, [the opposing party] must submit *evidence* of a different reasonable hourly rate." <u>Id.</u>  Stating "conclusorily that the requested rates [were] 'excessive' and cit[ing] two District Court cases . . . awarding lower fees to different attorneys in different cases" was insufficient; thus, "[a] hearing [was] not merited in [those] circumstances."  <u>Id.</u> Only after the opposing party brings forward sufficient evidence is it necessary for the court to "assess the experience, skill and reputation of Plaintiffs' attorneys and compare their rates to the rates in the relevant market for similar services by attorneys of comparable experience, skill and reputation."  <u>Apple Corps. Ltd. v. Int'l Collectors Soc'y</u>, 25 F.Supp. 2d 480, 492 (D.N.J. 1998).  Therefore, <u>since the Defendant has not put forth any record evidence contesting Plaintiff's $400 hourly rate</u>, a hearing is not necessary.

reasonableness of this rate in education law litigation, the burden of opposition shifted to the objecting party to produce contradictory evidence, and here the Mt. Laurel Board of Education has not done so.  Thus, as the Third Circuit has previously cautioned, the district court "may not exercise its discretion to adjust the requested rate downward."  Washington v. Philadelphia Court of Common Pleas, 89 F.2d at 1036.  This District Court is, of course, bound by this precedent and the objecting party has made no effort to distinguish the prior holding.

Therefore, the Court is constrained to approve Mr. Epstein's rate of $400 per hour as reasonable.

Furthermore, Defendant challenges Mr. Epstein's reduced rate of $100 for paralegal work that Mr. Epstein himself performed, such as exhibit "reproduction and copying," as well as "reviewing notices or drafting letters to attorneys regarding scheduling issues."  Def.'s Br. in Opp. to Pl's Mot. at 4, 13.  Paralegal work, if performed by an attorney, can be billed only at paralegal rates, while purely secretarial work is not compensable because it is subsumed in overhead and built into the attorney's fee for services.  See Missouri v. Jenkins, 491 U.S. 274, 285-88 (1989)(holding that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); Halderman by Halderman v. Pennhurst State School & Hosp.,

12

49 F.3d 939, 942 (3d Cir. 1995)("when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable"); <u>Lipsett v. Blanco</u>, 975 F.2d 934, 940 (1st Cir. 1992)(finding that "filing motions, translating depositions, and the like-fell into the gray area between purely clerical tasks and those properly entrusted to a paralegal").

The services for which compensation is claimed in this case appear to be of a paralegal nature rather than purely clerical, as paralegals are routinely used to perform such tasks as producing exhibit books; Mr. Epstein's performance of this paralegal duty at $100 per hour is reasonable as is the 3.5 hours claimed on April 25, 2009.[5]  However, Defendant again fails to provide any contrary evidence in the record "necessary to determine whether [Mr. Epstein's paralegal] rate is reasonable."[6]  <u>Tenafly Eruv Ass'n</u>, 195 F. App'x at 98 n.4.  Therefore, the Court will apply the $400 hourly fee to reasonable attorney hours

---

[5] In comparison, defense attorney Russell Weiss also performed the service of "preparation of exhibits" on July 6, 2009, for which he billed Mt. Laurel Board of Education at his usual attorney rate of $165 per hour.  (See P-46.)  Mr. Epstein, in contrast, is seeking $100 per hour in recognition of the paralegal nature of these services.

[6] See <u>Glass v. Snellbaker</u>, Civ. No. 05-1971, 2008 WL 4416450, at *6 n.1 (D.N.J. Sept. 23, 2008)(quoting <u>Missouri</u>, 491 U.S. at 285) (noting that "the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys.").

performed, and the $100 hourly fee to reasonable paralegal hours performed for this case.

### 2. Reasonable Hours

After the hourly rate is determined, the Court must determine whether the number of hours expended was reasonable. Hensley, 461 U.S. at 433. For this, the Court must examine the record to determine that the hours billed are not "unreasonable for the work performed." Washington, 89 F.3d at 1037. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183 (citing Hensley, 461 U.S. at 433). Compensable activities include the preparation of filing the lawsuit, background research, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, and travel among other things. See City of Riverside v. Rivera, 477 U.S. 561, 573 n.6 (1986); see also Maldonado v. Houston, 256 F.3d 181, 184-85 (3d Cir. 2001); Posa v. City of East Orange, Civ. No. 03-233, 2005 WL 2205786, at *4 (D.N.J. Sept. 8, 2005). In addition, time spent drafting and litigating a fee application is compensable. See Planned Parenthood v. Attorney General of the State of N.J., 297 F.3d 253, 268 (3d Cir. 2002).

In its evaluation, the district court has "a positive and

affirmative function in the fee fixing process, not merely a passive role." Maldonado, 256 F.3d at 184.  The district court must "go line, by line" through the billing records supporting the fee request.  Evans, 273 F.3d at 361.  As part of the determination of reasonable hours expended, attorneys seeking fees must document the hours for which payment is sought "with sufficient specificity. . . . [W]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Washington, 89 F.3d at 1037 (internal citations omitted); R.C. v. Bordentown Reg'l Sch. Dist. Bd. of Educ., Civ. No. 05-3309, 2006 WL 2828418, at *3 (D.N.J. Sept. 29, 2006).

Plaintiff submits a fee application totaling $570 in costs, and 136.8 hours amounting to $51,990 in attorney's fees, plus an additional $3,560, which represents 8.9 hours for litigating his fee application.  In support of the hours spent, Plaintiff submitted a computer printout detailing Mr. Epstein's fees and associated activities.  Pl's Mot. for Attorney's Fees at P-39-44.

Defendant argues that Mr. Epstein's fee application reveals several omissions justifying the hours billed.  Def.'s Br. in Opp. to Pl's Mot. at 6.  Defendant further argues that Mr. Epstein's fee application contains numerous billing entries that are unreasonable or not itemized appropriately, and thus should be denied or reduced.  Def.'s Br. in Opp. to Pl's Mot. at 6-7.

After examining Mr. Epstein's detailed billing printout,

Pl's Mot. for Attorney's Fees at P-39-44, the Court has determined that Mr. Epstein's fees should be reduced.  Mr. Epstein's fees will be reduced due to his work on Plaintiff's late opposition brief and subsequent motion which was not considered by this Court; his double billing of travel costs; his unreasonable time spent drafting his fee application; and his unreasonable time spent for trial preparation.

In this Court's previous opinion in this matter, it was held that Mr. Epstein's "fee request . . . should not seek compensation for deficient performance, [i.e.] his preparation of the opposition brief that was not considered [Docket Item 27], as well as the unsuccessful motion for late filing of that brief [Docket Item 28]."  <u>T.B.</u>, 2011 WL 2473327, at *9.  Accordingly, the Court finds that Mr. Epstein's fee is reduced by the 13.2 hours he spent reviewing Defendant's motions filed on September 30, 2010,[7] as well as the preparation of his late brief in opposition to these motions.  Therefore, Mr. Epstein's total fee will be reduced by $5,280.[8]

Mr. Epstein also billed $64 for travel to and from trial on April 28, 2009 and July 15, 2009.  Pl's Mot. for Attorney's Fees

---

[7]    <u>See</u> Defendant's Rule 12(b)(6), Rule 60 and Rule 12(c) motions. [Docket Items 20-22].

[8]    <u>See</u> Pl's Mot. for Attorney's Fees at P-43.  In Mr. Epstein's billing printout, he properly documents that the time spent drafting a Motion for Extension, [Docket Item 28], is not chargeable.

at P-39, P-41.  Mr. Epstein also includes the identical travel costs in his "TOTAL COSTS" on P-44 of his billing records.  This Court will not permit Mr. Epstein to recover for identical travel costs.  Accordingly, Plaintiff's total court costs will be reduced from $570 to $506.

In addition to the adjustments discussed above, Defendant asks the Court to reduce the rate of compensation for five other items: 1) "1/13/09 Drafted Legal Representation Agreement (3pp)," billed for 0.3 hours, totaling $120 in fees; 2) "1/23/09 Draft Petition," billed for 1.1 hours, totaling $440 in fees; 3) "4/25/09 Producing 4 (165 PGS) exhibit notebooks," billed at the paralegal rate for 3.5 hours, totaling $350 in fees; 4) "5/9-13/09 Reviewed 5-6-09 ltr from atty w/discovery (335 pp listed below)," billed for 5.4 hours, totaling $2,160 in fees; and 5) the 11.1 hours billed from July 18, 2011 to July 20, 2011 in submitting and preparing his fee petition.

First, the Court finds that the 11.1 hours Mr. Epstein spent drafting his fee application unreasonable.  Prior to this matter, Plaintiff was found to be the prevailing party for the purposes of attorney's fees.  T.B., 2011 WL 2473327, at *9.  Additionally, Mr. Epstein previously drafted a demand letter and affidavit for services on July 24, 2009, for which he billed 1.9 hours.  Furthermore, Plaintiff's motion for attorney's fees and the supporting brief and exhibits total 137 pages.  Plaintiff's

exhibits include 76 pages of photocopies of Defendant's counsel's billing statements.  Plaintiff's brief in support of the motion amounts to 10 pages, 3 pages of which are merely a restatement of this Court's statement of facts from T.B., 2011 WL 2473327. Therefore, considering this, as well as Mr. Epstein's experience filing fee applications,[9] the time spent drafting his fee application should be reduced.  The Court shall reduce those 11.1 hours to a reasonable time of 5.9 hours, which the Court finds reasonable under the above circumstances.

On July 12, 2009 to July 14, 2009, Mr. Epstein billed 10 hours for trial preparation.  However, nowhere in the record does it indicate that a trial was scheduled for July 15, 2009; rather, a settlement conference took place on that date.  T.B., 2011 WL 2473327, at *2.  Additionally, Mr. Epstein previously billed 9.1 hours for trial preparation on April 26, 2009 to April 27, 2009. Mr. Epstein's billing record shows that he separately billed for reviewing discovery materials received after April 2009. Therefore, considering this, the time spent for trial preparation from July 12, 2009 to July 14, 2009 should be reduced to a reasonable time allocatable to settlement conference

_____

[9]    See, e.g, Deptford Twp. Sch. Dist. v. H.B. ex rel E.B., 279 F. App'x 122 (3d Cir. 2008); L.J. ex rel. V.J. v. Audubon Bd. of Educ., Civ. No. 06-5350, 2009 WL 995458 (D.N.J. Apr. 13, 2009) aff'd, 373 F. App'x 294 (3d Cir. 2010); J.N. v. Mt. Ephraim Bd. of Educ., Civ. No. 05-2520, 2007 WL 4570051 (D.N.J. Dec. 21, 2007); P.N. v. Clementon Bd. of Educ., Civ. No. 02-1351, 2007 WL 1186552 (D.N.J. Apr. 20, 2007).

preparations.  The Court shall reduce those 10 hours to a reasonable time of 3 hours to prepare for the settlement conference in a case where he had already committed significant time to learning about the case.

Defendant's objections to the other items - drafting legal representation agreement, drafting petition, the clustering of dozens of entries during the May 9-13 period into one 5.4 hour amount - are overruled as substantially documented and reasonable.

### C.   Adjustment of Fees Based on Overall Success

Applying the rules set out above to the attorney's fees and costs requested in this case, the Court finds that the lodestar amount totals $45,896.[10]  Once the lodestar is calculated, the district court is permitted to adjust fees depending on the success of the party seeking fees.  Penn. Env't Def. Found., 152 F.3d at 232 (citing Hensley, 461 U.S. at 433.)  Specifically, the district court may adjust the amount, which is "primarily based on the degree of success that the plaintiff obtained."  Id.

Where a plaintiff presents different claims for relief

---

[10]   This amount is calculated from Mr. Epstein's total requested fee award of $56,120, including the additional $3,560 for the 8.9 hours of work on the Reply Brief, reduced by (1) $5,280, which represents Mr. Epstein's work on Plaintiff's late opposition brief and subsequent motion; (2) $64, which represents Mr. Epstein's double billing of travel costs; (3) $2,080, which represents Mr. Epstein's unreasonable time spent drafting his fee application; and (4) $2,800, which represents Mr. Epstein's unreasonable time spent for trial preparation.

that are based on unrelated facts and legal theories,
courts should exclude fees for time expended in
unsuccessful claims. However, where much of counsel's
time was devoted generally to the litigation as a whole,
making it difficult to divide the hours expended on a
claim-by-claim basis, the district court should focus on
the significance of the overall relief obtained by the
plaintiff in relation to the hours reasonably expended on
the litigation. [T]he most critical factor is the degree
of success obtained.  In exercising its discretion in
fixing the award, the district court may attempt to
identify specific hours that should be eliminated, or it
may simply reduce the award to account for the limited
success.

Field v. Haddonfield Bd. of Educ., 769 F.Supp. 1313, 1322 (D.N.J.

1991) (internal citations, quotations, and footnotes omitted);

see also Holmes v. Millcreek Twp. School Dist., 205 F.3d 583,

595-96 (3d Cir. 2000) (awarding one-fourth of fees where

plaintiff prevailed on some but not all claims).

    In this case, this Court previously "decline[d] to exercise

supplemental jurisdiction over the [NJLAD] claim" and noted that

"[o]ther than a handful of paragraphs composed for [Plaintiff's

partial summary judgment] motion, the Court is not aware of any

resources having been spent litigating the NJLAD claim in this

Court." T.B., 2011 WL 2473327, at *6.  Consequently, this Court

held that "[t]he fee request should also not include time

expended on the NJLAD claim." T.B., 2011 WL 2473327, at *9

Therefore, Plaintiff's award of attorney's fees must be reduced

to reflect the degree of success in this action in accordance

with the principles articulated in Hensley. See Hensley, 461 U.S.

at 434-35 (distinct unsuccessful claims are not entitled to fee

compensation).

Mr. Epstein's billing records between the time Defendant filed its three motions on September 30, 2010 [Docket Items 20-22] and the time this Court issued the June 20, 2011 Order and accompanying Opinion do not differentiate the amount of time specifically spent on Plaintiff's IDEA claim and NJLAD claim. Thus, due to the minimum amount of time Mr. Epstein spent on the NJLAD claim, as previously determined by this Court in T.B., 2011 WL 2473327, at *6, the remaining hours[11] during the aforementioned time period will be reduced by five percent. This results in a reduction of 1.035 hours, totaling $402; the previous total amount billed was $8,040, and the resulting reduced amount will be $7,638.[12]

Defendant further argues that, under Hensley, this Court should adjust Mr. Epstein's fees since "the overall relief obtained by Plaintiff was minimal in relation to the hours expended." Def.'s Br. in Opp. to Pl's Mot. at 8. However, as this Court previously held that "the undisputed facts show that the final settlement that the ALJ ordered . . . was more

---

[11]  As discussed earlier, supra text accompanying notes 5-6, the Court has already reduced Mr. Epstein's hours billed during this same time period by 13.2 hours.

[12]

| Hours Billed | Reduced Hours | Rate | Reduced Fee |
|---|---|---|---|
| 19.9 | 18.905 | $400/hr | $7,562 |
| 0.8 | 0.76 | $100/hr | $76 |
| **TOTAL** | | | **$7,638** |

favorable than the initial offer in at least three ways. . . .
[Furthermore e]ach of these [ways] standing alone is a
significant modification" of the "status quo" of the parties,
thus favoring Plaintiff.  T.B., 2011 WL 2473327, at *8.

The results obtained were rather substantial changes in
Plaintiff's favor in the context of a complex matter where the
child was being subjected to corporal punishment and adversive
conditioning.  The Consent Order provided for a remedy that the
Board would not agree to before commencement of the litigation,
including a 1:1 aide, a psychiatric evaluation, a behavior
assessment with oversight by a behavior analyst including review
of the school's crisis intervention policies, 50 hours of
compensatory education within 90 days, a rewritten IEP and
preclusion of restraints, according to Ms. Greenwald's Affidavit
(P-6 at ¶ 13.)  This result was achieved despite the school
district's strenuous defense that used significantly more defense
attorney hours than Plaintiff claims in this fee application.
If, as Defendant claims, the matter was neither novel nor
complex,[13] its position is inconsistent with its attorneys'

_____

[13]  The Court has also considered Defendant's argument that the
relief obtained in the Consent Order was not much different
from what the school district offers in the normal course, as
amplified in the Affidavit of Diane G. Willard.  The district did
not offer these benefits or protections to Plaintiff before
enduring substantial litigation.  If the district would have been
forthcoming at a much earlier date with the proposal Dr. Willard
says she intended to make, then perhaps much of the effort
expended by Plaintiff in achieving these results would not have

expenditure of 300 billable hours in the matter.  Where the
degree of success obtained in this settlement is weighed, the
Court is not left with the impression that the fee being awarded
here is disproportionate to that success.  Thus, the Court finds
that Plaintiff did in fact reach a level of success which makes
the Plaintiff's remaining reasonably expended hours a
satisfactory basis for the fee award.

As a further check on the reasonableness of the hours spent
to achieve this successful result, it may be instructive to
review the hours billed by defense counsel for comparable
services.  These defense billing statements are in the record (P-
45-121) spanning many tasks and itemized services.  The fact is
that defense counsel billed for almost 300 hours, which Affiant
Staci Greenwald, Esq., computes as including over 60 hours
related to due process, 75 hours drafting the Answer, 70 hours
related to discovery and 80 hours related to dispositive motions.
(P-1,6 at ¶ 15.)  Attorney Greenwald notes Defendant's attorneys
used over twice as many hours in defending this case (and not
including time opposing this fee application) as Mr. Epstein
claims in his prosecution of it.  Defendant does not take issue
with these figures.  Whatever Mr. Epstein's track record may be
in submitting questionable, excessive or improperly documented
fee applications in other IDEA cases, the application here is not

_____

been necessary.

23

one of them, with the exceptions of the relatively minor reductions noted above.

Therefore, the Court finds that only the five percent adjustment to the lodestar amount is necessary in order to deduct the amount of time spent on the NJLAD claim, and that no other reduction is necessary to bring the lodestar into proportion to the degree of success achieved on the IDEA claims.[14]


**III. CONCLUSION**

Therefore, for the reasons discussed above, the Court will grant Plaintiff's fee application in the reduced amount of $45,494.  The accompanying Order will be entered.


**March 30, 2012**                        **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge

---

[14] The Court will note that this litigation could have been resolved more efficiently and expeditiously if the parties were able to work together on the administrative level for a speedy resolution to this dispute.  As a result of the litigious delay experienced in this case, the school district ultimately incurred extensive legal fees and was prevented from reaching a resolution for a protracted period of time.  Likewise, this dispute over attorney's fees should have been susceptible to early resolution in a spirit of openness and compromise, rather than this two-year battle centered only upon fees.  When resources and funding for school districts is being decreased and curtailed, expeditious resolutions of cases such as this on the administrative level would save the public from having to bear the burden of unnecessary and costly attorney fees incurred by the school board and instead, better utilize the public's funding to aid programs such as those at issue in this case.